**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITE NATIONAL RETIREMENT FUND, f/k/a ILGWU NATIONAL RETIREMENT FUND and EDGAR ROMNEY and STEVEN THOMAS as Trustees of the UNITE NATIONAL RETIREMENT FUND, | CIVIL ACTION NO. 3:07-CV-00773 <br><br> (JUDGE CAPUTO) |
| Plaintiffs, | |
| v. | |
| ROSAL SPORTSWEAR, INC., ROSE BONI, a/k/a ROSA BONI, CATALDO BONI a/k/a ALDO J. BONI, TONIA BONI, LORENA BONI and PAT BONI | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is a motion to dismiss and for a more definite statement of Plaintiffs UNITE National Retirement Fund, Edgar Romney, and Steven Thomas' Complaint (Doc. 1) filed by Defendants Rose Boni, Cataldo Boni, Tonia Boni, Lorena Boni, and Pat Boni. (Doc. 7.)  Because Plaintiffs' state law claims in Counts IV through IX are preempted by ERISA; Plaintiffs were not required to provide notice of withdrawal liability to the individual Defendants; the Court has supplemental jurisdiction over the veil-piercing claim in Count I; a disputed issue of material fact exists as to whether the Wildwood rental property is a "trade or business;" and no heightened pleading is required for Plaintiffs' ERISA claims and their Complaint meets the notice pleading requirements of Federal Rule of Civil Procedure 8(a), the motions will be granted in part and denied in part.

The Court has jurisdiction over the claims in Counts I through III arising under federal law pursuant to 28 U.S.C. §§ 1331 and 1337, and the Court exercises supplemental jurisdiction over Plaintiffs' state law claims in Count I and Counts IV through IX pursuant to 28 U.S.C. § 1367.

## BACKGROUND

On April 25, 2007, Plaintiffs filed their Complaint, in which they allege the following: Plaintiff UNITE National Retirement Fund is a multiemployer employee pension benefit plan within the meaning of Sections 3(2) and (37) of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. § 1002(3) and (37). (Compl., Doc. 1 ¶ 8.)  Plaintiffs Edgar Romney and Steven Thomas are trustees and fiduciaries of the fund who are authorized to bring civil actions on behalf of the fund, its participants, and beneficiaries, for the purpose of collecting withdrawal liability.  (*Id.* ¶¶ 10-11.)

Defendant Rosal Sportswear, Inc. ("Rosal") is a Pennsylvania corporation, which at all relevant times had its principal place of business in Lehighton, Pennsylvania.  (*Id.* ¶ 12.)  Defendant Rose Boni was at all relevant times the sole shareholder and chief executive officer of Rosal.  (*Id.* ¶ 13.)  Defendant Cataldo Boni is the brother of Rose Boni[1], Defendants Tonia Boni and Lorena Boni are the daughters of Rose Boni, and Defendant Pat Boni is the son of Rose Boni.  (*Id.* ¶¶ 14-17.)

---

[1] Defendants' brief identifies Cataldo Boni as one of Rose Boni's children.  (Defs.' Mem. in Supp. of Mot. to Dismiss Pls.' Compl. & for More Definite Statement, Doc. 8, at 4.)

Pursuant to Defendant Rosal's collective bargaining agreement with a local affiliate of the International Ladies' Garment Workers' Union, the corporation was required to make contributions to the pension fund on behalf of its employees and was an employer within the meaning of section 3(5) of ERISA.  (*Id.* ¶¶ 19-20.)  In or about September of 2002, Rosal permanently ceased its manufacturing operations, effecting a "complete withdrawal" from the pension fund, by which it became liable to the fund for withdrawal liability under section 4201(a) of ERISA.  (*Id.* ¶¶ 21-22.)  The pension fund calculated Rosal's withdrawal liability to be two hundred twenty-six thousand and eighty-six dollars ($226,086.00) and sent written notice of that amount and a demand for payment to Rosal on or about March 6, 2003.  (*Id.* ¶¶ 23-24.)  Rosal failed to pay or to exercise its options under ERISA of requesting a review of the fund's determination within ninety (90) days of receiving the notice of liability or initiating arbitration within one hundred twenty (120) days.  (*Id.* ¶¶ 25, 27.)  The pension fund gave proper written notice to Rosal of its default in payment.  (*Id.* ¶ 26.)

The pension fund then commenced a civil action in the United States District Court for the Southern District of New York to recover the withdrawal liability, along with interest, statutory liquidated damages, attorneys fees, and costs, but after service of process, Rosal failed to appear, answer, or defend this civil action.  (*Id.* ¶¶ 28-29.)  As a result, on March 4, 2004, the court entered a Judgment in Default against Rosal for the liability and interest accrued to date, which equaled two hundred fifty thousand, nine hundred seventy-two dollars and thirty-two cents ($250,972.32), plus post-judgment interest.  (*Id.* ¶ 29.)  On May 10, 2004, the judgment against Rosal was entered on the

3

docket of the United States District Court for the Eastern District of Pennsylvania, and the pension fund then commenced supplemental proceedings in that court to locate assets of Rosal and related entities and individuals to satisfy the judgment. (*Id.* ¶¶ 31-32.) In the course of those supplemental proceedings, Plaintiffs discovered that Rosal no longer has any assets or property of record. (*Id.* ¶¶ 33-34.)

Plaintiffs also discovered in the course of those proceedings that after September of 2002, Defendant Rose Boni caused all the remaining assets of Rosal, an amount in excess of one hundred eighty-five thousand dollars ($185,000.00), to be transferred to herself and to Defendants Cataldo Boni, Tonia Boni, and Pat Boni. (*See id.* ¶¶ 36-41, 50.) Additionally, between January 1 and September 30 of 2002, she caused assets of Rosal totaling approximately one thousand four hundred dollars ($1,400.00) to be transferred to Defendant Lorena Boni and an additional eighteen thousand five hundred dollars ($18,500.00) to Defendant Tonia Boni. (*See id.* ¶¶ 80, 89-90.) Plaintiffs claim that these distributions were in excess of any reasonable compensation for services rendered and were unsupported by any valid and adequate consideration. (*See id.* ¶¶ 79, 89, 99, 109, 119.) These distributions were made to insiders while the corporation was failing to pay its debts when due,  while the assets of the corporation, at fair valuation, were less than its debts, and while or shortly before the corporation became insolvent. (*Id.* ¶¶ 81-84, 91-94, 101-104, 111-114, 121-124.)

Defendants Rose Boni, Cataldo Boni, Tonia Boni, and Pat Boni were aware or should have been aware that the transfers to them would prevent Rosal from paying all or part of Rosal's withdrawal liability to the pension fund and that the transfers would prefer

4

those Defendants over the pension fund and other creditors of Rosal.  (*Id.* ¶ 61.)
Plaintiffs aver that a principal purpose of the transfers was to avoid paying withdrawal
liability to the pension fund and that they were made with the intent to defraud the
pension fund  (*Id.* ¶¶ 62, 67.)

At all relevant times, Defendant Rose Boni disregarded the corporate
separateness between herself and Rosal and operated Rosal as an alter ego and single
employer with herself, and with several other entities that she owned and directly
controlled, including a real estate rental trade or business in Wildwood, New Jersey,
which was under common control with Rosal pursuant to section 4001(b)(1) of ERISA
and section 414(c) of the Internal Revenue Code of 1986, *as amended*, and regulations
promulated thereunder.  (*Id.* ¶¶ 43-44, 57-59.)  Defendant Rose Boni, at all relevant
times, treated the corporate assets of Rosal as her personal assets, regularly used them
for the personal benefit of herself and the other insider Defendants, wrote off or forgave
substantial debts that she owed to Rosal without providing any fair or equivalent
consideration to Rosal, caused Rosal to be under-capitalized or to become insolvent and
judgment-proof, and caused assets of Rosal to be diverted in order to avoid or delay the
pension fund's collection of its withdrawal liability.  (*Id.* ¶¶ 45-52.)  Defendant Rose Boni,
as sole officer, director, and shareholder of Rosal, had control over the corporation's
liquidation, and she improperly took advantage of her knowledge and power as a
corporate officer and director to prefer herself and the other insider Defendants over the
pension fund.  (*Id.* ¶¶ 69-70.)

5

Plaintiffs allege violations of ERISA in Counts I, II, and III, and violations of

Pennsylvania state law, including the Pennsylvania Uniform Fraudulent Transfer Act, in

Counts IV through IX.  Defendants filed a motion to strike Counts I and II and to dismiss

Counts IV through IX for failure to state claims upon which relief can be granted, and for

a more definite statement concerning the alleged transfer of assets that form the basis for

Counts I through IX.  (Defs.' Mot. to Dismiss & for More Definite Statement, Doc. 7.)  The

motion is fully briefed and ripe for disposition.


**LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of

a complaint, in whole or in part, for failure to state a claim upon which relief can be

granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167

L.Ed.2d 929 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355

U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d. 80 (1957)).  As a result of the *Twombly* holding,

Plaintiffs must now nudge their claims "across the line from conceivable to plausible" to

avoid dismissal.  *Id*.  The Supreme Court noted just two weeks later in *Erickson v.

Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), that

*Twombly* is not inconsistent with the language of Federal Rule of Civil Procedure 8(a)(2),

which requires only "a short and plain statement of the claim showing that the pleader is

entitled to relief."  Specific facts are not necessary; the statement need only " 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Id*. (citing *Twombly*, 127 S.Ct. at 1959 (quoting *Conley*, 355 U.S. at 47)).

There has been some recent guidance from the Courts of Appeals about the apparently conflicting signals of *Twombly* and *Erickson*.  The Second Circuit Court of Appeals reasoned that "the [Supreme] Court is not requiring [in *Twombly*] a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  Similarly, the Seventh Circuit Court of Appeals stated that "[t]aking *Erickson* and *Twombly* together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."  *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, — F.3d —, 2007 WL 2406859, at *4 (7th Cir. Aug. 24, 2007).

Until further guidance, this Court will follow the guidance of the Second and Seventh Circuit Courts of Appeals, and apply a flexible "plausibility" standard, on a case-by-case basis, in those contexts in which it is deemed appropriate that the pleader be obliged to amplify a claim with sufficient factual allegations.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly

authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id.* The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### I. Plaintiffs' Claims

Plaintiffs claim in Counts I and II that it is necessary to pierce the corporate veil and treat Defendant Rose Boni as an alter ego of and single employer with Rosal in order to prevent fraud or avoid the injustice that would otherwise result to the pension fund and that Rose Boni is an employer in her own right within the meaning of section 3(5) of ERISA and is jointly and severally liable with Rosal for its withdrawal liability. (Compl.,

Doc 1 ¶¶ 54-55.)  Plaintiffs also claim in Count III that under section 4212 of ERISA, Defendants Rose Boni, Cataldo Boni, Tonia Boni, and Pat Boni are jointly and severally liable to the pension fund and the transfers to them should be disregarded.  (*Id.* ¶¶ 63-64.)  In these Counts, Plaintiffs seek the amount of the withdrawal liability as of the date of the default judgment, interest on that amount, an additional amount equal to that interest as liquidated damages, and reasonable attorneys' fees and costs, all as provided for by ERISA.

In Count IV, Plaintiffs claim that Defendant Rose Boni breached her duties and her quasi-trust relationship to creditors of Rosal and that she is therefore personally liable under Pennsylvania law for the withdrawal liability of Rosal.  (*Id.* ¶¶ 72-77.)  In Count IV, Plaintiffs seek the amount of the assets transferred from Rosal after September 2002, plus interest and attorneys' fees and costs.  (*See id.* ¶ 77.)  In Counts V through IX, Plaintiffs claim that the transfer of assets to Defendants Tonia Boni (Count V), Lorena Boni (Count VI), Rose Boni (Count VII), Cadaldo Boni (Count VIII), and Pat Boni (Count IX), both after September of 2002 and between January and September of 2002 violate the Pennsylvania Uniform Fraudulent Transfer Act (PUFTA).  In these Counts, Plaintiffs request that the transfers from Rosal be set aside and that each Defendant pay to the pension fund the amount of assets he or she received after January of 2002, plus interest and attorneys' fees and costs.  (*Id.* ¶¶ 87, 97, 107, 117, 127.)

**II. Defendants' Motion to Dismiss**

Defendants' motion to dismiss argues that (A) ERISA preempts Plaintiffs' state law claims in Counts IV through IX, (B) Plaintiffs' state law claims are time barred, (C) Plaintiffs failed to allege that they provided mandatory statutory notice necessary to the success of their ERISA claims, (D) the Court lacks subject matter jurisdiction over the corporate veil-piercing theory in Count I, and (E) the Wildwood condominium discussed in Count II is not a "trade or business" within the meaning of ERISA.  Each of these arguments will be addressed in turn.

**A. ERISA Preemption**

Defendants argue that Plaintiffs' state law claims are preempted by ERISA's preemption provision in 29 U.S.C. § 1144(a).  A state law is preempted under ERISA if it makes reference to or has a connection with a covered employee benefit plan.  *See Cal. Div. Labor Standards Enforcement v. Dillingham*, 519 U.S. 316, 324 (1997).  A law makes reference to an ERISA plan if it imposes requirements or creates exemptions by explicit reference to ERISA plans, if it is a "common-law cause of action premised on the existence of an ERISA plan," if it "acts immediately and exclusively upon ERISA plans," or "where the existence of ERISA plans is essential to the law's operation.  *Id.* at 324-25 (citations omitted).

Neither the PUFTA nor the common-law breach of trust cause of action that Plaintiffs assert makes explicit reference to ERISA plans, and neither acts exclusively on ERISA plans.  Rather, they are of general applicability.  Count IV is premised on the

Pennsylvania common law rule that owners of dissolving corporations have a fiduciary duty to protect creditors when they make distributions to themselves. *See Heaney v. Riddle*, 23 A.2d 453, 456, 458 (Pa. 1942); *Robar Dev. Corp. v. Minutello*, 408 A.2d 851,853 (Pa. Super. 1979). And PUFTA's general rule provides that a transfer by a debtor is fraudulent as to a creditor if (1) it is made with actual intent to hinder, delay or defraud any creditor, or (2) if it is made without receiving a reasonably equivalent value in exchange and the debtor was engaged in a business for which his remaining assets were unreasonably small or the debtor intended, believed, or reasonably should have believed he would incur debts beyond his ability to pay as they became due. Pa. Cons. Stat. Ann. § 5104. Neither of these causes of action are premised on the existence of an ERISA plan. The *Robar* cause of action applies to all creditors of dissolving corporations, and PUFTA governs creditor-debtor relationships generally - without regard to whether the creditors became creditors because of ERISA's provisions or under other circumstances. The state laws at issue, therefore, do not "make reference" to ERISA plans.

Even if a law does not make reference to an ERISA plan, it may still be preempted if it has a connection with ERISA plans. *Cal. Div. Labor Standards Enforcement*, 519 U.S. at 325. In this inquiry, courts should "tak[e] into consideration the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* (internal quotation marks and citation omitted). One objective of the ERISA statute was that its civil enforcement remedies were intended to be exclusive. *See Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) ("The deliberate care with which

ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive."). That balance, the Court said, " would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* The Court went on to reason that "[t]he expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, indeed, the entire comparison [in the legislative history] of ERISA's § 502(a) to § 301 of the LMRA, would make little sense if the remedies available to ERISA participants and beneficiaries under § 502(a) could be supplemented or supplanted by varying state laws." *Id.*

Even in the more recent Travelers case that Plaintiffs rely on, the Supreme Court stated that "we have held that state laws providing alternative enforcement mechanisms also relate to ERISA plans, triggering pre-emption." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 657 (1995). A few years earlier, the Second Circuit Court of Appeals put it well: "a state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir. 1992).

The same principle was at play in *Central States, Southeast and Southwest Areas Pension Fund v. Mahoning National Bank*, in which, after the initial ERISA-based claim for withdrawal liability was dismissed as untimely under ERISA's statute of limitations, plaintiffs attempted to recover an amount equal to the withdrawal liability through Ohio

12

and federal common law fraud actions.  112 F.3d 252, 254-56 (6th Cir. 1997).  The court

there held the state claims preempted because they "are not for collection of a judgment

nor are they fraud claims.  Instead, they are poorly disguised ERISA withdrawal liability

claims."  *Id.* at 256.  In the case at hand, although there is a pre-existing judgment on the

substance of the withdrawal liability claim, the state law claims are likewise not claims for

collection on that judgment.  Indeed, whereas in *Central States*, "in each count of the

complaint, the plaintiffs seek to recover the amount of the withdrawal liability," *id.*, here,

Plaintiffs' state law claims seek only to recover the assets that they allege were

fraudulently transferred.

Plaintiffs' state law claims, thus, are not an alternate theory of recovery to the

withdrawal liability that ERISA provides, but they are an alternate theory of recovery to

the relief available under section 4212(c) of ERISA, 29 U.S.C. § 1392(c).  That section

provides that "[i]f a principal purpose of any transaction is to evade or avoid liability under

this part [governing employer withdrawals], this part shall be applied (and liability shall be

determined and collected) without regard to such transaction."  29 U.S.C. § 1392(c).

This section, on which Plaintiffs' claim in Count III is based, provides all the relief

Plaintiffs seek in Counts IV through IX regarding transactions subsequent to September

of 2002.  The only relief that Plaintiffs seek under state law that they do not also seek

under ERISA involves the claims of fraudulent transfers to Lorena Boni and Tonia Boni

between January 1 and September 30 of 2002.  (*See* Compl., Doc. 1 ¶¶ 80, 89-90.)  But

there is no reason that Plaintiffs could not have sought such relief under section 4212(c)

of ERISA.  For instance, in *Board of Trustees, Sheet Metal Workers' National Pension*

*Fund v. Illinois Range, Inc.*, a complete withdrawal and calculation of liability did not occur until late 1996, but the court nonetheless held that plaintiffs had stated a claim for relief under section 4212(c) based on a series of transactions between 1994 and 1996 that were designed to avoid withdrawal liability.  186 F.R.D. 498, 500, 503-04 (N.D. Ill. 1999). Likewise, in *Retirement Benefits Plan of Graphic Arts International Union Local 20-B v. Standard Bindery Co.*, a series of transactions, including some before the business closed and before notice of withdrawal liability was delivered, were all held to be actionable under section 4212(c).  654 F. Supp. 770, 771-73 (E.D. Mich. 1986).

Because Plaintiffs' state law claims in Counts IV through IX are only alternate theories of recovery for conduct actionable under ERISA, these claims are subject to the preemption provision in 29 U.S.C. § 1144(a) and will be dismissed.

## B. Limitations Period for State Law Claims in Counts IV through IX

Because all Plaintiffs' state law claims in Counts IV through IX are preempted by ERISA, there is no need to determine whether they are time barred.

## C. Statutory Notice

Defendants move to dismiss Counts I, II, and III, arguing that Plaintiffs' Complaint fails to assert that they provided written notice of withdrawal liability to the individual Defendants, which the Defendants claim is a necessary precondition to a suit to collect withdrawal liability from those Defendants.  (Defs.' Mem. in Supp. of Mot. to Dismiss Pls.' Compl. & for More Definite Statement, Doc. 8, at 13-14.)  But 29 U.S.C. § 1399(b), the basis of Defendants' argument, requires only that the plan sponsor notify the *employer* of

the withdrawal liability.  And the rights to arbitration and review that Defendants claim the individual Defendants were denied are available only to employers.  *See id.*  Nowhere does that section, or the avoidance of liability section, 29 U.S.C. § 1392(c) contain a requirement that notice of withdrawal liability must be provided to non-employer recipients of alleged wrongful transfers.

Nor do the authorities that Defendants cite support such a requirement.  *Combs v. Sun-Up Coal Co.* held that individual defendants were not liable because they were not employers within the meaning of ERISA, and simply noted in passing that, alternately, they had not been provided the statutory notice due to employers.  *See* 634 F. Supp. 13, 19 (D.D.C. 1985).  Another of the Defendants' authorities, *Connors v. Peles,* in which a court did conclude that notice should have been sent to individual defendants who were not "employers," is inapposite to the claims against all Defendants except Rose Boni because it involved only an alter ego theory and did not involve any claims of "preferential transfers, defacto liquidations, fraudulent conveyances or the like under the 'Avoidance' statutes of ERISA, 29 U.S.C. § 1392(c)."  724 F. Supp. 1538, 1546 (W.D. Pa. 1989).

And with regard to the alter ego claim against Rose Boni, *Connors*' holding, that notice to the corporation did not serve as notice to all defendants sued as alter egos of the corporation, is inconsistent with a more recent holding of the Third Circuit Court of Appeals.  *See Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 163, 175 (3d Cir. 2002) ("[N]otice sent to Twin provided sufficient notice to Twin's alter egos and satisfies 29 U.S.C. § 1399(b)(1).  Due to the remedial purpose of ERISA and the MPPAA [the Multiemployer Pension Plan Amendments Act of 1980, enacted to supplement ERISA], the MPPAA's notice provisions are liberally construed to protect

15

pension plan participants."). Finally, *Canario v. Lidelco, Inc.*, a district court case from the Second Circuit that Defendants cite, stated the same conclusion, that alter egos are due notice, with which the Third Circuit Court of Appeals disagrees. *See* 782 F. Supp. 749, 760 (E.D.N.Y. 1992).

As no requirement for notice to non-employer transferees or alter egos exists, Plaintiffs' claims will not be dismissed for failure to allege they fulfilled it.

**D. This Court Has Jurisdiction over Plaintiffs' Veil-Piercing Claim**

Defendants challenge the Court's subject matter jurisdiction over Count I of the Complaint, which seeks to hold Rose Boni personally liable for the unpaid withdrawal liability under a veil-piercing theory. (Defs.' Mem. in Supp. of Mot. to Dismiss & for More Definite Statement, Doc. 8, at 14-15.) In *Peacock v. Thomas*, the Supreme Court held that a veil-piercing claim to recover on a previously obtained judgment under ERISA is not an independent cause of action under ERISA and does not independently support federal subject matter jurisdiction. 516 U.S. 349, 353-54 (1996). This holding echoed the Court's earlier holding that Congress did not intend to authorize causes of action under ERISA beyond those specified in § 502(a), 29 U.S.C. § 1132(a). *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (declining to imply into ERISA a private right of action for extracontractual damages to a beneficiary).

The Court in *Peacock* made clear, however, that piercing the corporate veil is "a means of imposing liability on an underlying cause of action," and that "ERISA permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise subject to suit under ERISA." 516 U.S. at 354. In sum, a plaintiff can use veil-piercing theory in federal

courts as a way to reach assets and parties to impose liability for ERISA violations, but the plaintiff must first "invoke the jurisdiction of the federal courts" which he can do "only by independently alleging a violation of an ERISA provision or term of the plan." *Id.*

Plaintiffs here have done so.  The original, separate suit in which the *Peacock* plaintiff obtained his judgment was not an adequate source of supplemental jurisdiction because "in a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction." *Id.*  In the present case, on the other hand, Plaintiffs have alleged independent violations of ERISA in the same proceeding as the supplemental veil-piercing claim.  In Count II, Plaintiffs seek relief under 29 U.S.C. § 1301(b) and 29 U.S.C. § 1451(c).  And in Count III, Plaintiffs seek relief under 29 U.S.C. § 1392(a), alleging that Defendants violated ERISA by engaging in transactions with the primary purpose of avoiding their withdrawal liability.  The claim in Count I is "so related to claims in the action within ... original jurisdiction that [it] form[s] part of the same case or controversy." *See* 28 U.S.C. § 1367(a).  The facts, parties, and issues in Count I are substantially similar to those of Counts II and III.  Furthermore, none of the factors in § 1367(c) lead this Court to decline to exercise supplemental jurisdiction:  The veil-piercing theory does not raise novel or complex issues of state law; it does not substantially predominate over the federal claims, and the Court has not dismissed all claims over which it had original jurisdiction.  Therefore, Defendants' motion to dismiss Count I for lack of subject matter jurisdiction will be denied.

**E. The Wildwood Condominium**

Defendants move to dismiss Count II of the Complaint because, they argue, the Wildwood condominium that Rose Boni owns should not be considered a "trade or business" within the meaning of 29 U.S.C. § 1301(b)(1).  For Plaintiffs to reach that property for satisfaction of the withdrawal liability, they must show that it is under common control with Rosal Corporation and that it is a "trade or business."  *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001).  Relying on cases holding that a garage apartment on a couple's residential property was not a "trade or business," and that investments cannot be trades or businesses, the Defendants conclude that "mere ownership of a rental property ... cannot be considered a 'trade or business'" and that Plaintiffs' claim is therefore "insufficient as a matter of law." *See Cent. States, Se. & Sw. Pension Fund v. White*, 258 F.3d 636, 641-42 (7th Cir. 2001); *Fulkerson*, 238 F.3d at 895; (Defs.' Mem. in Supp. of Mot. to Dismiss & for More Definite Statement, Doc. 8, at 16-17.)

But the cases Defendants cite belie their conclusion that a rental property cannot, as a matter of law, be a trade or business.  In *White*, the court stated that "the MPPAA does not define the phrase 'trade or business.'"  258 F.3d at 642.  Indeed, far from the issue being clear enough to be settled as a matter of law, the court even went on to discuss a dispute over what the appropriate test for defining "trade or business" is.  *Id.* The test it and the *Fulkerson* court embraced considered two questions: whether the primary purpose of the activity was income or profit, and whether it was carried out with continuity and regularity.  *Id.*  These are factual questions, inappropriate for disposition in a motion to dismiss.

Further, Plaintiffs cite cases in which leasing activity has been held to constitute a trade or business within the meaning of the MPPAA.  *See, e.g., Vaughn v. Sexton*, 975 F.2d 498, 503 (8th Cir. 1992) (real estate leasing); *Bd. of Trs. v. Lafrenz*, 837 F.2d 892, 894 (9th Cir. 1988) (truck leasing).  Plaintiffs have alleged that Defendant Rose Boni maintained a real estate rental trade or business in Wildwood, New Jersey.  (Compl., Doc. 1 ¶ 57.)  Whether it is a trade or business or a mere investment remains a disputed issue of material fact, and Defendants' motion to dismiss Count II will therefore be denied.

## III. Defendants' Motion for a More Definite Statement

Federal Rule of Civil Procedure 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud of mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Plaintiffs alleged that Defendants acted fraudulently, but their fraud claims were preempted, and only ERISA violations remain in the Complaint.  Although the claim in Count III, which alleges transactions conducted for the principal purpose of evading or avoiding liability, is in some sense similar to a fraud claim, it requires Plaintiffs to prove only the Defendants' *intent* to avoid liability, not that they acted fraudulently.  So, no heightened pleading under Rule 9(b) is required and the Court need not determine whether the Complaint would

have met that standard.  *See, e.g.*, *In re Boston Sci. Corp. ERISA Litig.*, No. 06-10105-JLT, 2007 U.S. Dist LEXIS 62926, at *9 (D. Mass. Aug. 27, 2007) ("The appropriate pleading standard for alleging breaches of fiduciary duty in this ERISA case is the notice pleading requirements of Fed. R. Civ. P. 8(a)."); *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 822 (S.D. Ohio 2004) ("[T]his Court can discern no reason why, generally, ERISA plaintiffs should have to meet heightened pleading requirements, as opposed to the simplified notice pleading standard.");*see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.  Rule 9(b), for example provides for greater particularity in all averments of fraud of mistake.  This Court, however, has declined to extend such exceptions to other contexts.")  Furthermore, a court that denied a motion for a more definite statement in a case alleging violations of 29 U.S.C. § 1392(c) made no reference to heightened pleading under Rule 9(b).  *See Bd. of Trs. v. Ill. Range, Inc.*, 186 F.R.D. 498, 503-05 (N.D. Ill 1999).

Generally, motions for more definite statements are only granted when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith without prejudice to itself." *Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.*, No. CIV.A. 00-CV-3683, 2000 WL 1780231, at *2 (E.D. Pa. Dec. 4, 2000).  "Motions for a more definite statement are generally disfavored, and should [be granted only] if a pleading is unintelligible, making it virtually impossible for the opposing party to craft a responsive pleading." *Kasteleva v. Judge*, No. 3:05-CV-1739, 2006 U.S. Dist. LEXIS 24493, at *10 (M.D. Pa. Apr. 24, 2006).

The Complaint in this case satisfies the pleasing requirements of Federal Rule of Civil Procedure 8(a).  It put Defendants on notice of what the claims are in each Count by specifying the sections of ERISA under which Plaintiffs are proceeding and identifying the factual basis of each claim.  Furthermore, the Complaint alleges the amount of money transferred to each of the individual Defendants and specifies how much was transferred to each Defendant in each quarter of 2002.  (*See* Compl., Doc. 1 ¶¶ 80, 90, 100, 110, 120.)  Because no heightened pleading is required and the Complaint meets the pleading requirements of Federal Rule of Civil Procedure 8(a), the Defendants' motion for a more definite statement will be denied.

## CONCLUSION

Because Plaintiffs' state law claims in Counts IV through IX are preempted by ERISA, the Court will grant Defendants' motion to dismiss those claims.  Because Plaintiffs were not required to provide notice of withdrawal liability to individual Defendants who were not "employers" within the meaning of ERISA; the Court has supplemental jurisdiction over the veil-piercing claim in Count I; and a disputed issue of material fact exists as to whether the Wildwood rental property is a "trade or business," the Court will deny Defendants' motions to dismiss Plaintiffs' claims in Counts I, II, and III.  Because no heightened pleading is required and the Complaint meets the pleading requirements of Federal Rule of Civil Procedure 8(a), the Defendants' motion for a more definite statement will be denied.

An appropriate Order follows.

 Sept. 14, 2007                                    /s/ A. Richard Caputo
Date                                               A. Richard Caputo
                                                   United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITE NATIONAL RETIREMENT FUND, f/k/a ILGWU NATIONAL RETIREMENT FUND and EDGAR ROMNEY and STEVEN THOMAS as Trustees of the UNITE NATIONAL RETIREMENT FUND, | CIVIL ACTION NO. 3:07-CV-00773 |
| | (JUDGE CAPUTO) |
|         Plaintiffs, | |
|         v. | |
| ROSAL SPORTSWEAR, INC., ROSE BONI, a/k/a ROSA BONI, CATALDO BONI a/k/a ALDO J. BONI, TONIA BONI, LORENA BONI and PAT BONI | |
|         Defendants. | |

**ORDER**

**NOW**, this 14th  day of September, 2007, **IT IS HEREBY ORDERED** that

Defendants' motion to dismiss and for a more definite statement is **GRANTED** in part and

**DENIED** in part, as follows:

(1) The Defendants' motion to dismiss Counts I, II, and III is hereby **DENIED**.

(2) The Defendants' motion to dismiss Counts IV, V, VI, VII, VIII, and IX is hereby

    **GRANTED** and those claims are hereby **DISMISSED**.

(3) The Defendants' motion for a more definite statement is hereby **DENIED**.

                         /s/ A. Richard Caputo
                         A. Richard Caputo
                         United States District Judge