**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITE NATIONAL RETIREMENT
FUND, f/k/a ILGWU NATIONAL
RETIREMENT FUND and EDGAR
ROMNEY and STEVEN THOMAS as
Trustees of the UNITE NATIONAL
RETIREMENT FUND,

        Plaintiffs,

           v.

ROSAL SPORTSWEAR, INC., ROSE
BONI, a/k/a ROSA BONI, CATALDO
BONI, a/k/a ALDO J. BONI, TONIA
BONI, LORENA BONI and PAT BONI,

        Defendants.

CIVIL ACTION No. 3:07-CV-0773

(JUDGE CAPUTO)

## MEMORANDUM

Currently before the Court is Plaintiffs' Motion to Bar Discovery Concerning Changes in Assessed Withdrawal Liability that was made orally at the discovery conference held in chambers on September 15, 2008.  For the reasons stated below Plaintiffs' motion will be granted.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

## BACKGROUND

Plaintiffs Romney and Thomas, trustees and fiduciaries of the UNITE National Retirement Fund ("the Fund"), filed their Complaint (Doc. 1) in the current case on April 25, 2007  in attempt to collect unpaid withdrawal liability from Rosal Sportswear ("Rosal"), Rose Boni, Cataldo Boni, Tonia Boni, Lorena Boni, and Pat Boni.  According to the Complaint, Rosal permanently ceased its manufacturing operations in September of 2002, effecting a "complete withdrawal" from the Fund, by which it became liable to the Fund for withdrawal

liability under section 4201(a) of the Employee Retirement Income Security Act of 1974 ("ERISA").  The Fund determined Rosal's withdrawal liability to be two hundred twenty-six thousand and eighty-six dollars ($226,086.00) and provided Rosal with written notice of the amount along with a demand for payment on or about March 6, 2003.  Rosal did not pay the demanded amount and failed to exercise its options under ERISA to request a review of the Fund's calculation within ninety (90) days of receiving the notice of liability or initiate arbitration within one hundred twenty (120) days.  The Fund provided Rosal with the appropriate written notice of its default in payment, and subsequently commenced an action in the United States District Court for the Southern District of New York, seeking to recover the withdrawal liability.  After appropriate service of process, Rosal did not appear, answer or defend against this action, and the court entered a Judgement in Default against Rosal for the liability and accrued interest for a total of two hundred fifty thousand, nine hundred seventy-two dollars and thirty-two cents ($250,972.32).

On May 10, 2004, the judgement from the Southern District of New York was entered on the docket of the United States District Court for the Eastern District of Pennsylvania, and the Fund, in an attempt to satisfy the judgment, initiated supplemental proceedings to locate assets of Rosal, related entities, and related individuals.  Through these proceedings, the Fund learned that Rosal no longer has any assets or property of record.  The Fund alleges that Defendant Rose Boni, the former chief executive officer and sole stockholder of Rosal Sportswear, caused all the assets of Rosal to be transferred to herself and the other members of her family who are now Defendants in the current action.

Plaintiffs filed their Complaint initiating the current action on April 25, 2007, therein asserting nine Counts against Defendants.  On June 11, 2007, the Defendants filed a motion

2

to dismiss pursuant to Federal Rule of Civil Procedure 12. (Doc. 7.)  On September 14, 2007, the Court entered an Order granting Defendants motion to dismiss Counts IV through IX of the Complaint and denying Defendants motion to dismiss Counts I through III.  (Doc. 15.)  Defendants filed their Answer to the Complaint along with affirmative defenses on October 5, 2007 (Doc. 19) and, following a case management conference, the Court entered an Order on January 24, 2008 assigning the case to the "standard" case management track (Doc. 22).  On August 23, 2008, the Court received a letter from Plaintiffs' counsel requesting an in-person conference to discuss a discovery issue arising out of Defendants' efforts to obtain information about changes in assessed withdrawal liability. (Doc. 25.)

The Court held this conference and heard arguments from both Plaintiffs and Defendants on September 15, 2008.  At the conference, Plaintiffs made an oral motion to bar discovery concerning changes in assessed withdrawal liability, arguing that Defendants are seeking to conduct discovery concerning the Fund's calculation of the amount of Plaintiffs' withdrawal liability and the Fund's efforts to collect withdrawal liability from other employers.  Plaintiffs argue that the information and documents sought by the Defendants do not and cannot reasonably bear on any issue or matter that may be involved in any of Defendants' defenses.  For this reason, Plaintiffs urge the Court to find that the Defendants cannot sustain the burden of making a clear showing that the information and documents sought are relevant to any claims in this matter.

In response, the Defendants explain that prior to the alleged cessation of operations in September 2002, Rosal received several letters from the Fund indicating the amount of its expected withdrawal liability.  Letters dated in December 1996 and March 2001 indicated that Rosal's anticipated withdrawal liability was zero ($0.00) and a letter dated August 19,

2002 advised that Rosal's anticipated withdrawal liability was seventeen thousand two hundred thirty-five dollars ($17,235.00).  The next letter that Rosal received, dated March 6, 2003, assessed their withdrawal liability to be two hundred twenty-six thousand and eighty-six dollars ($226,086.00).   The Defendants state that they are seeking discovery to determine the bases and reasons for the drastic increase in withdrawal liability occurring between August 2002 and March 2003.

Defendants submitted a brief in opposition to Plaintiffs' motion on September 29, 2008 (Doc. 30) and Plaintiffs submitted a reply brief on October 14, 2008 (Doc. 31).   Plaintiffs' motion has been fully briefed and is currently ripe for disposition.

## DISCUSSION

In their brief opposing Plaintiffs' motion (Doc. 30), Defendants argue that the information they seek to explore is within the broad scope of permissible discovery created by Federal Rule of Civil Procedure 26(b)(1), which states, in part, that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

Fed. R. Civ. P. 26(b)(1).   Defendants further argue that the information they seek is specifically relevant to Counts I and III of Plaintiffs' Complaint.

In Count I, Plaintiffs seek to pierce the corporate veil, thereby making Rose Boni personally liable for the debts of Rosal Sportswear.  Defendants argue that they should be allowed to explore the cause for the drastic increase in withdrawal liability amounts occurring between August 2002 and March 2003.  In support of this argument, they cite to the Third Circuit Court of Appeals' decision in *Carpenters Health & Welfare Fund v. Kenneth R.*

4

*Ambrose, Inc.*, 727 F.3d 279, 284 (3d Cir. 1983), which states that "the piercing of the corporate veil or the alter ego theory is a tool of equity that is appropriately utilized when the court must prevent fraud, illegality or injustice . . .." Defendants also invoke the maxim that "he who seeks equity must do equity," *Freck v. IRS*, 37 F.3d 986, 996 (3d Cir. 1994). This argument suggests that discovery concerning Plaintiffs' calculation of Rosal's withdrawal liability amounts and Plaintiffs' attempts to collect from other employers, is relevant in the current case because such discovery would assist the Court in determining whether Plaintiffs treated Defendants equitably and are, themselves, entitled to equitable relief.

In Count III of Plaintiffs' Complaint alleges that certain salary and benefit payments made to members of the Boni family with the intent to evade or avoid ERISA withdrawal liability. In their opposition brief, Defendants represent to the Court that Plaintiffs identified the withdrawal liability calculations contained in the various letters sent from Plaintiffs to Defendants between December 17, 1996 and April 14, 2003 as the basis for their Count II "evade or avoid" claim. Thus, Defendants argue that:

> Having placed the various withdrawal liability calculations squarely at issue by citing the letters as the basis for its 'evade or avoid' claim, the [Plaintiffs] should not be allowed to shield itself from discovery concerning the preparation and delivery of the letters, the reasons for changes in the amount of the withdrawal liability set forth in the letters and whether the amount of the withdrawal liability changed in whole or in part due to settlements or compromises reach with other plan participants.

(Defs.' Br. in Opp. at 11.) The Defendants also suggest that the August 2002 to March 2003 increase in their calculated withdrawal liability was the result of the Fund's inability to collect withdrawal liability from other employers participating in the Fund. For this reason, they further argue that the discovery sought is necessary to achieve the purpose of the Multiemployer Pension Plan Amendments of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461,

5

which created withdrawal liability.  In particular, Defendants cite to the Third Circuit Court of Appeals discussion of the MPPAA in *Supervalu, Inc. v. Board of Trustees*, which notes that when Congress enacted the MPPAA, it "intended . . . to uniformly impose withdrawal liability" and insure that "the financial burden will not be shifted to . . . remaining employers."  500 F.3d 334, 336-337 (3d. Cir. 2007), *cert. denied*, 128 S.Ct. 1231 (2008).  Accordingly, the Defendants represent that the proposed discovery seeks to determine whether any part of the financial burden has been improperly shifted to Rosal Sportswear and whether the Fund is seeking to shift this improper burden to members of the Boni family, a determination relevant to the purpose of the MPPAA and Counts I through III of Plaintiffs' Complaint.

In their reply brief (Doc. 31), the Plaintiffs do not specifically reply to the arguments made by Defendants.  They do, however, provide a detailed summary of the complex statutory scheme of withdrawal liability, including the computation and reallocation of unfunded vested benefits ("UFBs") under 29 U.S.C. §§ 1391(b)(4)(B)(i) - (iii). Following this review, Plaintiffs state that the Defendants now seek to avoid these statutory provisions in three ways. First, Plaintiffs argue that Defendants are trying to avoid the statutory provisions with respect to the calculation of withdrawal liability, including the computation of unfunded vested benefits, thereby asking the Court to substitute its judgment for the judgment exercised by the Fund trustees in accordance with 29 U.S.C. § 1391(b)(4)(B)(iii).  Second, Plaintiffs argue that Defendants are asking the Court to ignore the fact that they have not challenged any of the Fund trustees' calculations through arbitration and the resulting statutory presumption that these calculations are correct.  Finally, Plaintiffs argue that Defendants' arguments suggest that equity considerations trump the MPPAA, an argument expressly rejected by the Seventh Circuit Court of Appeals in *Central States Southeast and*

6

*Southwest Areas Pension Fund v. Bellmont Trucking Co., Inc.*, 788 F.2d 428 (7th Cir. 1986).

After reviewing Plaintiffs' and Defendants' arguments, documents filed in this case, and relevant statutes and cases, the Court finds that the change in withdrawal liability amounts quoted to Rosal Sportswear and the calculations and circumstances underlying these changes are not relevant to the remaining claims at issue.

Count I of Plaintiffs' Complaint seeks to assign Rosal Sportswear, Inc.'s withdrawal liability to Defendant Rose Boni under an alter ego theory.   The Third Circuit Court of Appeals has stated that a district court should consider the following eight factors when determining whether alter ego liability is appropriate:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

*Trustees of the National Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003).   None of these factors suggest that a court should consider either the method of calculation or the amount of liability attaching to an individual defendant if the court does, in fact, determine that an alter ego relationship existed.

Similarly, the facts and circumstances surrounding the change in withdrawal liability amounts between August 2002 and March 2003, are not germane to the question of whether Rose Boni operated a real estate business under common control with Rosal Sportswear as alleged in Count II of Plaintiffs' Complaint.   Determining whether Rosal Sportswear and the real estate business allegedly owned by Rose Boni were operated as a common enterprise will involve examination and comparison of the businesses' ownership structure, financials,

corporate records, and any other factors that might reveal whether Rosal and the real estate firm were under common control.[1]  Once again, none of these considerations involve, in any way, the underlying method used or circumstances surrounding the Plaintiffs' calculation of Rosal's withdrawal liability.

Additionally, the method of calculation and the calculated amount of Rosal Sportswear's withdrawal liability will not be a salient factor in determining whether transfers of Rosal property to various members of the Boni family were attempts to evade or avoid Rosal's withdrawal liability obligations as alleged in Count III of Plaintiffs' Complaint.  The Defendants inform the Court that, in a response to an interrogatory asking about the basis for the "evade or avoid" claim, Plaintiffs responded by identifying letters sent from the Fund to Rosal between 1996 and 2003, including the August 19, 2002 and March 6, 2003 letters containing drastically different withdrawal liability calculations.  As a result, Defendants now argue that Plaintiffs cannot cite these letters as the basis for their claim without placing the various withdrawal liability calculations at issue.  The Court, however, finds that further questions into the method of calculation or other factors supporting the amount of withdrawal liability are unnecessary for determining whether the alleged transfers were performed with the intent to avoid withdrawal liability. The letters at issue suggest that Rosal Sportswear was aware that it was likely to  incur withdrawal liability if the company ceased operations or otherwise withdrew from the Fund.[2]  Accordingly, the claim asserted in Count III of the

---

[1] The Court notes that many of the factors considered when determining whether Rose Boni's real estate business was a operated under shared control with Rosal Sportswear will closely resemble many of the eight "alter ego factors" identified in *Lutyk*.

[2] The Court further observes that each of the letters received by Rosal prior to when it ceased operations in September 2002 were prepared at Rosal's request and stated that:

> This figure is only an estimate, and should not be relied on as final.  The

Complaint simply requires a determination of whether payments made to members of the Boni family were motivated by the knowledge of, and intent to evade or avoid, already-assessed or potential withdrawal liability.  The method of calculation or the actual amount of those calculations are extraneous to the question of whether or not the prospect of being subject to withdrawal liability–in any amount–motivated the transfers identified in Count III.

Finally, the Court rejects Defendants' argument that Boni family members receiving the transfers at issue in Count III should be allowed to challenge the calculations of withdrawal liability because they (1) had no prior notice that Plaintiffs would seek to hold them personally liable for unpaid portions of Rosal's calculated withdrawal liability and (2) had neither reason nor opportunity to seek arbitration on this issue.  (Defs.' Br. in Opp., at 14 n.1.)  Defendants do not dispute that Rosal Sportswear, Inc. received the various letters notifying the company of the Funds estimates and final calculation of withdrawal liability.  Defendants also do not dispute that Rose Boni was "*the* shareholder" at Rosal.  (Defs.' Answer, Doc. 18 ¶ 13 (emphasis added).)   When discussing what type of notice is appropriate for a pension fund to provide, the Third Circuit Court of Appeals has stated that:

> A fund can only be expected to provide notice to the corporation that is the ostensible employer of the fund's participants. A pension fund has no way of knowing the ownership of a closely held corporation . . .. Holding the fund responsible for providing notice to all other possible entities that might subsequently be deemed to be in a controlled group with the employer corporation would place the fund in an untenable position. In contrast, the stockholders and officers of corporations . . . certainly are aware of their holdings. If they choose to ignore [the corporation's] potential liability as a member of a controlled group under the MPPAA, then they should suffer the

---

Fund explicitly reserved the right to make changes of any kind to this estimate, and, in the even of withdrawal by the employer, to assert appropriate liability without regard to any prior estimate.

(December 17, 1996 Letter, Doc. 30 Ex. 2; March 27, 2001 Letter, Doc. 30, Ex. 3; August 19, 2002 Letter, Doc. 30, Ex 4.)

consequences if that issue is subsequently determined adversely to them.

*IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 128 (3d Cir. 1986).

Accordingly, the Court believes there is no question that the Fund provided sufficient notice to both Rosal Sportswear, Inc. and its sole stockholder, Rose Boni.  Furthermore, just as the Court of Appeals reasoned in *Baker & Williamson* that a fund has no way of knowing the ownership of a closely held corporation, the Fund in this case had no way of knowing of the familial relationships between Rosal's sole stockholder and Rosal's salaried employees. Likewise, holding the Fund responsible for providing notice to all of the individual family members working for Rose Boni at Rosal Sportswear would place the fund in an untenable position.  Both Rosal Sportswear, Inc. and its sole stockholder, Rose Boni, were provided notice of Rosal's withdrawal liability and declined the opportunity to challenge this amount through the procedures established by statute.  The Court will not ignore these statutory provisions and now allow challenges to the trustees' calculation simply because the Fund alleges that Rosal's stockholder tried to avoid liability by transferring Rosal's remaining property to family members who were previously unknown to the Fund.

## CONCLUSION

For the reasons stated in the previous sections of this memorandum, the Court will grant the Motion to Bar Discovery Concerning Changes in Assessed Withdrawal Liability made by Plaintiffs at the September 15, 2008 discovery conference.

An appropriate order follows.


 February 9, 2009  
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITE NATIONAL RETIREMENT FUND,
f/k/a ILGWU NATIONAL RETIREMENT
FUND and EDGAR ROMNEY and
STEVEN THOMAS as Trustees of the
UNITE NATIONAL RETIREMENT FUND,

Plaintiffs,

v.

ROSAL SPORTSWEAR, INC., ROSE
BONI, a/k/a ROSA BONI, CATALDO
BONI, a/k/a ALDO J. BONI, TONIA BONI,
LORENA BONI and PAT BONI,

Defendants.

CIVIL ACTION No. 3:07-CV-0773

(JUDGE CAPUTO)

### ORDER

**NOW**, this 9th  day of February, 2009, **IT IS HEREBY ORDERED** that Plaintiffs'

Motion to Bar Discovery Concerning Changes in Assessed Withdrawal Liability is

**GRANTED.**

 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge